IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **JERMAINE GREEN,** | ) |
| **Plaintiff,** | ) ) ) |
| v. | ) ) Case No. 20-cv-1124-DWD |
| **WEXFORD HEALTH SOURCES, et al.,** | ) ) ) ) |
| **Defendants.** | ) |

# MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Before the Court are Motions to Dismiss for Failure to State a Claim filed by Defendants Wexford Health Sources (Doc. 22), Reynal Caldwell (Doc. 26) and Alberto Butalid (Doc. 34). Plaintiff has filed responses (Docs. 43-45).[1]

## Legal Standard

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a Complaint must "state a claim to relief that is plausible on its face." *Lodholtz v. York Risk Servs. Group, Inc.*, 778 F.3d 635, 639 (7th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the

---

[1] Plaintiff's responses were filed late, ranging from nine days to nearly three months. At no point did Plaintiff file a motion for extension of time. "Failure to timely file a response to a motion may, in the Court's discretion, be considered an admission of the merits of the motion." Local Rule 7.1(c). The Court chooses not to exercise this option, preferring to resolving the Motions to Dismiss on the merits. However, the parties are cautioned that this is a very risky course of action, and that motions for extension of time are the preferred method for dealing with deadline issues.

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). That said, even the liberal notice-pleading standard applicable to federal cases "require[s] more than naked assertions devoid of further factual enhancement." *Zurich Am. Ins. Co. v. Ocwen Fin. Corp.*, 990 F.3d 1073, 1080 (7th Cir. 2021) (citing *Ashcroft*).

### The Amended Complaint

The following facts are alleged in the Amended Complaint (Doc. 21): Plaintiff was transferred to Vandalia Correctional Center ("Vandalia") in July 2018. At that time, he suffered from congestive heart failure, high blood pressure, anxiety, depression and spinal stenosis. He required medication for his heart condition and back pain, as well as a back brace.

When Plaintiff was transferred to Vandalia, Defendant Butalid (the medical director of the facility) and Caldwell (as part of a group designated "Nurses")[2] intentionally failed to order or dispense his medications and denied Plaintiff a back brace. As a result, Plaintiff suffered from a number of cardiovascular symptoms (including decreased heart function) and increased back pain. These continued until Plaintiff was released from prison in September 2019.

---

[2] In his Memorandum, Defendant Caldwell asserts that he is in fact a doctor, not a nurse. (Doc. 27). While Plaintiff appears to concede this point (Doc. 43, p. 2), the Court must proceed on the facts as alleged in the Amended Complaint for purposes of motions to dismiss.

## Discussion

As an initial matter, Defendant Caldwell alleges that the Amended Complaint improperly pleads the claims against him as part of the groups "Defendant Nurses" and "Defendants." Caldwell is correct that a plaintiff will run afoul of the pleading standards in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) by merely asserting that indefinite groups of individuals violated his constitutional rights. See *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (finding the phrase "one or more of the Defendants" did not adequately connect specific defendants to illegal acts, and thus failed to adequately plead personal involvement). However, Plaintiff argues there is no ambiguity because his allegations should be read as stating that each of the Defendants (including Caldwell) individually refused him proper treatment. According Plaintiff the leeway appropriate on a motion to dismiss, his pleading adequately conveys that Caldwell is being accused of all the conduct imputed to these groups, and such pleading is not inherently improper.

That said, Plaintiff has improperly pled as to the "Unknown Nurses" and "Unknown Officers." Because the Amended Complaint neither describes the unknown defendants nor gives a sufficient description of their conduct to help identify them, Plaintiff could ascribe any conduct he chooses to any number of people that occurred at any time during the relevant time period. The Court will set a deadline for Plaintiff to identify—either by name or by specific description—these individuals.

**Count 1**

To state a claim for deliberate indifference to a serious medical condition under the Eighth Amendment by an individual, a plaintiff must plead 1. that he suffers from an objectively serious medical condition, and 2. that the defendant knew about his condition and the risk it posed but disregarded that risk. *Arnett v. Webster*, 658 F.3d 742, 750-51 (7th Cir. 2011). Something more than negligence or even malpractice is required. *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008).

Butalid and Caldwell argue that the allegations in the Amended Complaint are not adequate to state a claim against them, as there is no facts pled that they met or examined Plaintiff and thus the allegations (if taken as true) do not satisfy the second 'subjective' prong of the deliberate indifference standard. Plaintiff responds that Butalid "as medical director, would have been on notice of his health condition" but intentionally "did not order and dispense Plaintiff's required medication." (Doc. 45, pp. 5-6). This line of argument does not pass muster. Plaintiff must plead and show that Butalid *did* know of a substantial risk to Plaintiff's health, not that he *would have* known by virtue of his position. "Even objective recklessness—failing to act in the face of an unjustifiably high risk that is so obvious that it should be known—is insufficient to make out a claim....[i]nstead, the Supreme Court has instructed us that a plaintiff must provide evidence that an official actually knew of and disregarded a substantial risk of harm." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016), *as amended* (Aug. 25, 2016) (*citing Farmer v. Brennan*, 511 U.S. 825 (1994)). Accordingly, the Amended Complaint does not sufficiently to state a claim against Butalid on Count 1.

4

As to Caldwell, Plaintiff alleges that "as one of Plaintiff's medical providers, [Caldwell] would have been on notice of his health condition[,]" but also that he "was aware of Plaintiff's objectively serious medical conditions and intentionally did not order and dispense his medication." (Doc. 43, p. 7). If it were in the Amended Complaint, this would likely suffice. However, the closest allegation actually in the pleading is that Defendants (including Caldwell) "had notice" of Plaintiff's serious medical condition. (Doc. 21, p. 4). "Notice" and "actual knowledge" are distinct legal concepts.

> A person has notice of a fact or condition if that person (1) has actual knowledge of it; (2) has received information about it; (3) has reason to know about it; (4) knows about a related fact; or (5) is considered as having been able to ascertain it by checking an official filing or recording.

NOTICE, Black's Law Dictionary (11th ed. 2019). *See also Orgone Cap. III, LLC v. Daubenspeck*, 912 F.3d 1039, 1047 (7th Cir. 2019) (discussing the distinction in the context of statute of limitations triggers). Accordingly, the actual contents of the Amended Complaint are not sufficient to state a claim against Caldwell on Count 1.

As to Wexford, there is an additional hurdle. A private corporation "cannot be held liable under § 1983 unless the constitutional violation was caused by an unconstitutional policy or custom of the corporation itself. *Respondeat superior* liability does not apply to private corporations under § 1983." *Shields v. Illinois Dep't of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014). "In a case against a private contractor that provides healthcare to incarcerated people, the critical question for liability is whether a municipal (or corporate) policy or custom gave rise to the harm (that is, caused it)." *Howell v.*

5

*Wexford Health Sources, Inc.*, 987 F.3d 647, 653–54 (7th Cir. 2021) (internal quotations omitted). This is often referred to as *Monell* liability.

Plaintiff's theory of Section 1983 liability for Wexford is contingent on a finding that the alleged final policymaker (Butalid) was individually liable for deliberate indifference. (Doc. 44, pp. 6-7). In such a situation, failure of the individual liability precludes a finding of *Monell* liability. *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 664 (7th Cir. 2016).

In his Response, Plaintiff argues that Paragraph 33 of the Amended Complaint "clearly stated that there is a policy of denying inmates their required medication." (Doc. 44, p. 7). Had Plaintiff actually made that accusation, the claim against Wexford might survive. However, Paragraph 33 simply reiterates the allegation that Wexford is liable "because the unconstitutional conduct [...] was carried out by a person with policymaking-authority[.]" (Doc. 21). No mention of either a formal policy or a widespread practice is made. *See Katz-Crank v. Haskett*, 843 F.3d 641, 647 (7th Cir. 2016) (affirming dismissal of a *Monell* claim where "[t]he complaint alleges lots of individual misconduct by county officials, but it nowhere identifies any county policy or custom that caused [Plaintiff's] injury."). Accordingly, Count 1 is dismissed without prejudice as to Wexford, Butalid and Caldwell.

## Count 2

To state a claim for failure to intervene, a plaintiff must plead that a defendant "(1) had reason to know that a fellow officer was using excessive force or committing a constitutional violation, and (2) had a realistic opportunity to intervene to prevent the act

6

from occurring." *Lewis v. Downey*, 581 F.3d 467, 472 (7th Cir. 2009). Plaintiff argues that as medical director, Butalid "was in a position where he had a reasonable opportunity to prevent the harm Plaintiff suffered on a daily basis for over a year." (Doc. 45, p. 7). He argues that Wexford "also had a reasonable opportunity to prevent this violation as Plaintiff has plead that there is a practice of denying inmates their required medication." (Doc. 44, p. 8). As discussed above, this allegation is not actually contained in the Amended Complaint.

Plaintiff's position with regard to Butalid and Wexford attempts to circumvent the long-established holding that the doctrine of *respondeat superior* cannot be used to hold a supervisor liable for conduct of a subordinate that violates a plaintiff's constitutional rights. *See Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). That is, a supervisor cannot be liable solely by virtue of their position. "[S]upervisors who are merely negligent in failing to detect and prevent subordinates' misconduct are not liable…. The supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001) (quoting *Jones v. City of Chicago*, 856 F.2d 985, 992-93 (7th Cir. 1988)).

As to Caldwell, Plaintiff argues that "he had knowledge of Plaintiff's medical condition, knowledge that he was not receiving proper care, and he had a reasonable opportunity to stop the harm that Plaintiff was suffering on a daily basis and failed to do so." (Doc. 43). Again, however, the Amended Complaint only alleges notice, not actual knowledge. Without more, this is basically just another way to plead negligence and not

7

a basis for Section 1983 liability.  Accordingly, Count 2 is dismissed without prejudice as to Butalid, Caldwell and Wexford.

### Counts 3 and 4

Plaintiff also asserts claims against Butalid, Caldwell and Wexford under Title II of the Americans with Disabilities Act ("ADA"), and Section 504 of the Rehabilitation Act, 29 U.S.C. §794.  Pleading a violation of the Rehabilitation Act requires four elements: (1) the plaintiff must be a handicapped individual as defined by the Act; (2) the plaintiff must be otherwise qualified for participation in the program; (3) the program must receive federal financial assistance; and (4) the plaintiff must have been denied the benefits of the program solely because of his handicap.  *Reed v. Columbia St. Mary's Hosp.*, 915 F.3d 473, 484 (7th Cir. 2019) (quotations omitted).  Title II ADA claims are essentially the same, except there is no federal assistance element and the final element allows for mixed-motive discrimination claims.  *Id.*, citing *Whitaker v. Wisconsin Dep't of Health Servs.*, 849 F.3d 681, 684 (7th Cir. 2017).

Plaintiff fails to state a claim against Butalid and Caldwell, as individual capacity suits for the discrimination claims arising directly under the Rehabilitation Act and the ADA are improper.  *Stanek v. St. Charles Cmty. Unit Sch. Dist. No. 303*, 783 F.3d 634, 644 (7th Cir. 2015).

As to Wexford, there is some unsettled debate as to whether private corporations contracting with government entities to provide governmental services are "instrumentalities" of those governmental entities within the scope of the ADA and

Rehabilitation Act's nondiscrimination provisions. See 42 U.S.C. § 12131(1)(B) and 29 U.S.C. § 794(b)(1)(A). With regard to the Rehabilitation Act, the question is academic—Plaintiff has failed to adequately allege that Wexford received federal funding. Plaintiff makes the broad allegation that all Defendants "as employees of entities of local government that receive federal financial assistance" are subject to the Rehabilitation Act. (Doc. 21, p. 7). However, there is no Rehabilitation Act liability for those paid by an organization or program which receives federal funds. "The coverage of the Rehabilitation Act does not follow federal aid past the intended recipient to those who merely derive a benefit from the aid or receive compensation for services rendered pursuant to a contractual arrangement." *Grzan v. Charter Hosp. of Nw. Indiana*, 104 F.3d 116, 120 (7th Cir. 1997) (*abrogated on other grounds*). While the federal-funds recipient agency could, in theory, be liable under the Rehabilitation Act for the acts of their subcontractors, the subcontractors themselves are not within its scope.

As to the ADA, the Court is convinced by the reasoning of the Second and Eleventh Circuits: the term "instrumentalities" refers to governmental units or units created by them. *Green v. City of New York*, 465 F.3d 65, 78 (2d Cir. 2006); *Edison v. Douberly*, 604 F.3d 1307, 1310 (11th Cir. 2010). Taking the broader possible definition of instrumentalities—anyone who does anything to effectuate or further a governmental entities' functions or policies—would necessarily include individual government employees, a result directly contrary to established precedent as discussed above. This result agrees with the majority of this District's prior cases on the issue. *See e.g., Morris v. Baldwin*, 2018 WL 6682838 (S.D.

Ill 2018). Accordingly, Plaintiff's claims under Counts 3 and 4 against Butalid, Caldwell and Wexford are dismissed.

### Count 5

Plaintiff's allegation of civil conspiracy to violate Plaintiff's constitutional rights also fails to state a claim as to Butalid, Caldwell and Wexford. The elements of a conspiracy claim are (1) the individuals reached an agreement to deprive him of his constitutional rights, and (2) overt acts in furtherance actually deprived him of those rights. *Daugherty v. Page*, 906 F.3d 606, 612 (7th Cir. 2018) (quotation omitted). A conspiracy claim need not be pled with the particularity required by Fed. R. Civ. P. 9(b). However, even before *Twombly* and *Iqbal*, courts required a plaintiff asserting such a claim "to allege the parties, the general purpose, and the approximate date of the conspiracy." *Loubser v. Thacker*, 440 F.3d 439, 443 (7th Cir. 2006). As *Twombly* and *Iqbal* clarified, however, there must be something more than "labels[,] conclusions, and a formulaic recitation of the elements of a cause of action[.]" *Twombly*, 550 U.S. at 555.

Plaintiff concedes that his conspiracy claim against Wexford fails. (Doc. 44, p. 2). As to Butalid and Caldwell, there is nothing pled to suggest agreement or coordination between them and any other party beyond Plaintiff's bare allegation of the fact. (Doc. 21, p. 9). Otherwise, all that is left is a pleading of parallel conduct, which is not a conspiracy. Accordingly, Plaintiff's claims against Butalid, Caldwell and Wexford in Count 5 are dismissed.

### Count 6

10

Finally, Plaintiff alleges a state law claim against all Defendants for intentional infliction of emotional distress ("IIED"). To state an IIED claim under Illinois law, a plaintiff must allege: "(1) the defendants' conduct was extreme and outrageous; (2) the defendants knew that there was a high probability that their conduct would cause severe emotional distress; and (3) the conduct in fact caused severe emotional distress." *Swearnigen-El v. Cook Cty. Sheriff's Dep't*, 602 F.3d 852, 864 (7th Cir. 2010).

Here, Plaintiff's failure to adequately plead actual knowledge on the part of Butalid and Caldwell dooms his claim for IIED. There is no indication the pleadings that either actually knew about Plaintiff's conditions, and so it would be illogical to say they know of a high probability of the emotional distress that not treating them would cause.

That said, there remain claims against Wexford employees. Contrary to Wexford's assertions, there is no bar to a state law claim being brought on a *respondeat superior* basis—that applies only to the Section 1983 claims. Plaintiff has alleged that the remaining Nurse Defendants were acting within the scope of their employment, which may suffice. *Otterbacher v. Nw. Univ.*, 838 F. Supp. 1256, 1262 (N.D. Ill. 1993) (*citing Meerbrey v. Marshall Field & Co.*, 564 N.E.2d 1222, 1227 (1990)). The sufficiency of Plaintiff's claims against those employee Defendants is not before the Court. Accordingly, Plaintiff's IIED claim is dismissed against Butalid and Caldwell, but survives as to Wexford.

## Disposition

Defendants Butalid and Caldwell's Motions to Dismiss (Docs. 26 and 34) are **GRANTED**; Plaintiff's claims against them are **DISMISSED without prejudice**.

11

Defendant Wexford's Motion to Dismiss (Doc. 22) is **GRANTED in part**; Counts 1-5 of the Amended Complaint are **DISMISSED without prejudice**.

**IT IS SO ORDERED.**

DATED:  July 27, 2021

_____
DAVID W. DUGAN
United States District Judge